1   TINA WOLFSON, SBN 174806
2   twolfson@ahdootwolfson.com
    ROBERT AHDOOT, SBN 172098
3   rahdoot@ahdootwolfson.com
    THEODORE W. MAYA, SBN 223242
4   tmaya@ahdootwolfson.com
    **AHDOOT & WOLFSON, P.C.**
5   10850 Wilshire Boulevard, Suite 370
    Los Angeles, California 90024
6   Tel: 310-474-9111; Fax: 310-474-8585

7   Counsel for Plaintiff,
8   MICHAEL HILL

9

**FILED**

2013 FEB 15  P 3: 23  (99)

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

/55

10          **UNITED STATES DISTRICT COURT**    **DMR**

11          **NORTHERN DISTRICT OF CALIFORNIA**

12          **C** San Fra**1**cisco Divi**3**ion    **0696**

| | |
|---|---|
| 13   MICHAEL HILL, individually and on behalf of all others similarly situated, | Case No. _____ |
| 14 | |
| 15          Plaintiff, | **CLASS ACTION COMPLAINT** |
| 16          v. | JURY TRIAL DEMANDED |

17   ROBERT'S AMERICAN GOURMET FOOD, LLC, a Delaware Limited Liability Company dba PIRATE BRANDS,

18

19          Defendant

1. **Violation of California False Advertising Law, California Business & Professions Code § 17500, et seq.;**
2. **Violation of California Unfair Competition Law, California Business & Professions Code § 17200, et seq.;**
3. **Breach of Express Warranty;**
4. **Violation of Consumer Legal Remedies Act, California Civil Code § 1750, et seq.**

20

21

22

23

24

25

26

27

28

FILED BY FAX
PURSUANT TO LOCAL RULES

---

CLASS ACTION COMPLAINT

Plaintiffs Michael Hill ("Plaintiff"), by and through his counsel, brings this Class Action Complaint against Robert's American Gourmet Food, LLC, doing business as Pirate Brands, on behalf of himself and all others similarly situated, and allege, upon personal knowledge as to his own actions and his counsel's investigations, and upon information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1.    In recent years, consumer consciousness regarding foods and beverages that they perceive to be healthy and natural has been heightened, causing consumers to seek out products marketed as such. As a result, the market for natural or organic foods and beverages has grown rapidly, yielding billions of dollars in revenue for food and beverage manufacturers.

2.    Robert's American Gourmet Food, LLC ("Defendant") is a snack food company that manufactures and sells its "Pirate Brands" snack foods nationwide. Pirate Brands snack food products are found in over 90% of United States supermarkets.

3.    Defendant manufactures, markets, and sells its snack foods nationwide from its manufacturing plant in Sea Cliff, New York, including but not limited to (1) Original Tings Crunchy Corn Sticks, (2) Pirate's Booty Aged White Cheddar Rice and Corn Puffs, (3) Pirate's Booty Barrrrrbeque Rice and Corn Puffs, (4) Pirate's Booty Chocolate Rice and Corn Puffs, (5) Pirate's Booty New York Pizza Rice and Corn Puffs, (6) Pirate's Booty Sour Cream & Onion Rice and Corn Puffs, and (7) Pirate's Booty Veggie Rice and Corn Puffs, (8) Potato Flyers Baked Potato Chips, and (9) Smart Puffs Real Wisconsin Cheddar Baked Cheese Puffs (collectively, the "Products").

4.    In an effort to capture a segment of the lucrative health food market, Defendant has systematically marketed and advertised the Products as "all natural" on the bags, on its website, TV commercials and social media such as Facebook, so that any United States consumer who purchases the Products is exposed to Defendant's "all natural" claim.

5.    This claim is deceptive and misleading because the Products are made with unnatural ingredients. Specifically, the Products are made with plants whose genes have been altered by scientists in a lab for the express purpose of causing those plants to exhibit traits that are not naturally their own. Genetically modified organisms ("GMOs") are not natural by design. The Products also contain chemically synthesized ingredients that are not natural.

CLASS ACTION COMPLAINT

6.      Accordingly, Defendant misleads and deceives reasonable consumers, including the named Plaintiff and the other members of the Class, by portraying a product made from unnatural ingredients as "All Natural."

7.      Defendant's conduct harms consumers by inducing them to purchase and consume a product with GMOs and other ingredients that are not natural on the false premise that the product is "all natural."

8.      Plaintiff brings claims against Defendant individually and on behalf of a California class of all other similarly situated purchasers of the Products for violations of California's False Advertising Law, Cal. Bus & Prof. Code § 17500, *et seq*. ("UCL"), the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*. ("UCL"), breach of express warranties, and the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.  Plaintiff seeks an order requiring Defendant to, among other things: (1) cease the unlawful marketing; (2) conduct a corrective advertising campaign; and (3) pay damages and restitution to Plaintiff and Class members in the amounts paid to purchase the products at issue.

## JURISDICTION AND VENUE

9.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because the proposed class has more than 100 members, the class contains at least one member of diverse citizenship from Defendant, and the amount in controversy exceeds $5 million.

10.     The Court has personal jurisdiction over Defendant because Defendant conducts substantial, continuous, and systematic business, including sales of Products, in California.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events and omissions giving rise to this action occurred in this District as Defendant distributes the Products for sale within this District.

12.     Intradistrict Assignment: Pursuant to Civil Local Rules 3-2(c) a substantial part of the events or omissions which give rise to the claims occurred in San Francisco County, and it is therefore appropriate to assign this action to the San Francisco Division.

CLASS ACTION COMPLAINT

**PARTIES**

13.      Plaintiff Michael Hill is a resident of San Francisco, California.  Mr. Hill has purchased several Products in San Francisco, California within the past four years in reliance on Defendant's representations that the Products were  "All Natural."  These representations and omissions were material to Mr. Hill's decision to purchase the Products.  Mr. Hill was willing to pay for the Products because of the representations that they were "all natural" and would not have purchased the Products, would not have paid as much for the Products, or would have purchased alternative products in absence of the representations.

14.      Defendant Robert's American Gourmet Food, LLC is a Delaware limited liability company with its principal place of business at 100 Roslyn Avenue, Sea Cliff, New York, 11579.  Defendant manufactures and distributes the Products from its manufacturing plant in Sea Cliff, New York to consumers in California and throughout the United States.

**SUBSTANTIVE ALLEGATIONS**

**Defendant Deceptively Labels The Products As "All Natural"**

15.      Within the Class Period, Defendant systematically marketed and advertised the Products as "all natural" in product packaging, print advertisements, in television commercials, on its website, and on social media sites such as Facebook.  The "all natural" message is inherently intertwined with the Pirate Brands definition and recognition.

16.      For example, Defendant labels every bag of the Products as "ALL NATURAL" to the left below the main product logo and the product description:

3

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



CLASS ACTION COMPLAINT

17.     The back of such bags also features numerous slogans and representations to induce the purchaser into believing that the Products are all natural, including the following statements:

- "These tasty puffs are baked to perfection with real, all natural ingredients."

- "At Pirate Brands, we have been creating healthier treasures since 1987 with the belief you shouldn't have to 'sacrifice' taste for health… Arrr!."

- "We've created products for the whole family that are all natural, baked AND delicious."

18.     Similarly, on its website http//www.piratebrands.com, Defendant makes numerous statements and representations to re-enforce the "all natural" part of its brand.  For example, in the middle of the homepage, a banner appears with the following message:

> Ahoy There!
> You've discovered the isle of healthy snacking.  Abundant with all natural, deliciously baked treasures.  We've eliminated trans fats and gluten to keep our ingredients simple and family snacking guilt free.  Our only additives are just good fun.  So get onboard with Pirate's Booty, Smart Puffs, Tings, and Potato Flyers, and join the healthy snacking revolution.

(http://www.piratebrands.com (last visited on February 13, 2013).)

19.     In recounting the company's history, and referring to its alleged founder, Defendant states, among other things:

> The Pirate Brands story began in 1987 in Sea Cliff, NY with our founder, Robert. Robert, a snack industry renegade and father of two, scoured the high-seas for a tasty treasure that would inspire people to live a little healthier and have fun while doing it. That's when Robert discovered the cheesy rice and corn puffs we know today as, Pirate's Booty.

> Thanks to Robert and his tasty treasure, no longer do you have to eat "cheese" puffs dusted with neon orange powder with incomprehensible ingredients. When you buy Pirate Brands products, you are getting wholesome goodness without the guilt.

> We've created products for the whole family that are all natural, baked AND delicious. We've eliminated fryers and trans fats from all of our products and keep the ingredients simple (no need to Google® search today). Our only additives are just good, wholesome fun.

> It's been 20 years and we're still continuing our journey by offering fun, and deliciously baked all-natural snacks. You can find Pirate Brands products including, Pirate's Booty, Smart Puffs Potato Flyers and Original Tings at a supermarket near you or at our online store!

> Our consumers, family and friends are very important to us. Your loyalty has been longstanding and we thank you for being part of our journey.

5

CLASS ACTION COMPLAINT

1  (http://www.piratebrands.com/story/ (last visited on February 13, 2013).)

2       20.    The "Frequently Asked Questions" of the website boasts as follows:

3       **What makes Pirate Brands' products unique?**

4       Pirate Brands' snack food products are delectably crunchy, all-natural,
        baked, trans fat, gluten free and possess great subtle flavors that will have
5       you craving more!

6       **What are the quality standards of Pirate Brands' ingredients?**

7       All-natural
        Gluten free
8       Trans fat free
        No preservatives
9       No artificial sweeteners
        Kosher
10
11      **Is Pirate's Booty popcorn?**

12      Pirate's Booty is made from corn and rice meal that is extruded and results
        in a puff of rice and corn. In some industry circles, the puffs are known as
13      hull-less popcorn.

14      **Are Pirate Brands' products organic?**

15      No, our products do not qualify as organic, but all Pirate Brands' products
        are all-natural. According to the Food and Drug Act, products are deemed
16      "all-natural" if nothing artificial or synthetic including color additives,
        regardless of source has been included in or added to a food that would
17      normally be expected to be in that food. All of Pirate Brands' products
        meet and exceed the Food and Drug Act's definition of "all-natural."

18      **Who conducts Pirate Brands' all-natural certification?**

19      The natural label claim is certified by Pirate Brands' through ingredient
        sourcing and how the products fall under the auspice and regulatory
20      mandate of the Food and Drug Act.

21  (http://www.piratebrands.com/faq/ (last visited on February 13, 2013).)

22      21.    The "all natural" claim is re-enforced and re-iterated throughout television commercials

23  for the Products.  For example, one TV ad featuring a "limited edition" SpongeBob SquarePants flavor

24  and Defendant's pirate cartoon characters:

25      •   "An all natural snack to guide you through a journey to find your booty"; and

26      •   "Pirate's Booty: The All Natural Baked Snack."

27  (http://www.youtube.com/watch?v=V-2hM1C4KkA (last visited February 13, 2013).)

28

6

CLASS ACTION COMPLAINT

22.     Similarly, Defendant's Facebook page states the following message under its company information: "Ahoy matey! Drop anchor and discover our all natural treasure, Pirate's Booty!" (https://www.facebook.com/piratesbooty (last visited February 13, 2013).)

23.     By consistently labeling the Products as "all natural" within the Class Period, Defendant ensured that all consumers purchasing the Products would be exposed to its "all natural" claim.

24.     A claim that a product is "natural" is material to a reasonable consumer.

## Genetically Modified Organisms Are Not Natural

25.     The dictionary defines the term "natural" as "existing in or produced by nature: not artificial." (Webster's Ninth New Collegiate Dictionary 788 (1990).) This common dictionary definition of the term "natural" is consistent with the expectations of a reasonable consumer.

26.     GMOs are not natural, let alone "all natural." Monsanto, one of the companies that makes GMOs, defines GMOs as "Plants or animals that have had their genetic makeup altered to exhibit *traits that are not naturally theirs*. In general, genes are taken (copied) from one organism that shows a desired trait and transferred into the genetic code of another organism." (http://www.monsanto.com/newsviews/Pages/glossary.aspx#g (last visited February 13, 2013) (emphasis added).) "Unnatural" is a defining characteristic of genetically modified foods.

27.     Romer Labs, a company that provides diagnostic solutions to the agricultural industry, defines GMOs as "[a]griculturally important plants [that] are often genetically modified by the insertion of DNA material from outside the organism into the plant's DNA sequence, allowing the plant to *express novel traits that normally would not appear in nature*, such as herbicide or insect resistance. Seed harvested from GMO plants will also contain these [sic] modification." (http://www.romerlabs.cornlen/analytes/genetically-modified-organisms.html (last visited February 13, 2013) (emphasis added).)

28.     That GMOs are not natural is further evidenced by the explanations of health and environmental organizations, such as The World Health Organization, which defines GMOs as "organisms in which *the genetic material (DNA) has been altered in a way that does not occur naturally*. The technology is often called 'modern biotechnology' or 'gene technology', sometimes

7

also 'recombinant DNA technology' or 'genetic engineering'. It allows selected individual genes to be transferred from one organism into another, also between non-related species. Such methods are used to create GM plants – which are then used to grow GM food crops." (World Health Organization, 20 Questions on Genetically Modified (GM) Foods at http://www.who.int/foodsafety/publications/biotech/en/20questions_en.pdf (last visited February 13, 2013).)

29.     The Environmental Protection Agency has distinguished conventional breeding of plants "through natural methods, such as cross-pollination" from genetic engineering using modern scientific techniques. (United States Environmental Protection Agency, Prevention, Pesticides and Toxic Substances, Questions & Answers Biotechnology: Final Plant-Pesticide/Plant Incorporated Protectants (PIPs) Rules (Jul. 19, 2001) at http://www.epa.gov/scipoly/biotech/pubs/qanda.pdf ("*Conventional breeding* is a method in which genes for pesticidal traits are introduced into a plant *through natural methods*, such as cross-pollination. . . . Genetically engineered plant-incorporated protectants are created through a process that utilizes several different modem scientific techniques to introduce a specific pesticide-producing gene into a plant's DNA genetic material.") (emphasis of "through natural methods" added; remaining emphasis in original) (last visited February 13, 2013).)

30.     As indicated by the definitions above, which come for a wide array of sources, including industry, government, and health organizations, GMOs are not "all natural." GMOs are "created" artificially in a laboratory through genetic engineering. Thus, by claiming that its Products are "all natural," Defendant deceives and misleads reasonable consumers.

### The Products Are Made From Genetically Modified Organisms

31.     Testing by an independent third party has revealed that Defendant's Products are made from GMOs.

32.     Defendant's "all natural" representations are false, deceptive, misleading, and unfair to consumers, who are injured in fact by purchasing a product that Defendant claims are "all natural" when in fact they are not.

### The Products Contain Synthetic, Chemically-Derived Ingredients

33.     The Food and Drug Administration ("FDA") has established guidelines that define the

8

1    appropriate boundaries for using the term "natural"; according to the FDA, a product is not natural if

2    it contains synthetic ingredients, including added color or artificial flavoring.  The exact definition

3    provided by the FDA states: "'natural' [means] that nothing artificial or synthetic (including all color

4    additives regardless of source) has been included in, or has been added to, a food that would not

5    normally be expected to be in the food."  58 Fed. Reg. 2302, 2407 (Jan. 6, 1993).

6        34.      The term "synthetic" is also defined in federal statute as "a substance that is

7    formulated or manufactured by a chemical process or by a process that chemically changes a

8    substance extracted from naturally occurring plant, animal, or mineral sources, except that such term

9    shall not apply to substances created by naturally occurring biological processes."  7 U.S.C. §

10   6502(21).

11       35.      The Products contain one or more of the following synthetic substances:

12              a.      Citric Acid: A chemically-synthesized acid that is commonly used as an

13   emulsifier.  The chemical process used to create citric acid includes treatment with sulfuric acid.

14              b.      Dextrose: Corn or potato starch that is synthesized by hydrolysis into glucose

15   units.

16              c.      Maltodextrin:  A powder fiber additive often used in processed foods as a

17   filler or thickener.  Maltodextrin is chemically-synthesized from corn starch by partial hydrolysis

18   into a white spray-dried powder.

19                           **CLASS ACTION ALLEGATIONS**

20       36.      Plaintiff seeks relief in his individual capacity and seeks to represent a class consisting

21   of all others who are similarly situated.  Pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3),

22   Plaintiff seeks certification of a class initially defined as follows:

23          All consumers in California who from February 15, 2009 until the date notice is

24          disseminated to the Class (the "Class Period"), purchased the following Pirate Brands

25          Products: (1) Original Tings Crunchy Corn Sticks, (2) Pirate's Booty Aged White

26          Cheddar Rice and Corn Puffs, (3) Pirate's Booty Barrrrrbeque Rice and Corn Puffs, (4)

27          Pirate's Booty Chocolate Rice and Corn Puffs, (5) Pirate's Booty New York Pizza Rice

28          and Corn Puffs, (6) Pirate's Booty Sour Cream & Onion Rice and Corn Puffs, and (7)

1    Pirate's Booty Veggie Rice and Corn Puffs, (8) Potato Flyers Baked Potato Chips, and

2    (9) Smart Puffs Real Wisconsin Cheddar Baked Cheese Puffs.

3    37.    Excluded from the Class are Defendant and its subsidiaries and affiliates, Defendant's

4    executives, board members, legal counsel, the judges and all other court personnel to whom this case

5    is assigned, and their immediate families, and those who purchased the Products for the purpose of

6    resale.

7    38.    Plaintiff reserves the right to amend or modify the Class definition with greater

8    specificity or division into subclasses after they have had an opportunity to conduct discovery.

9    39.    Numerosity. Fed. R. Civ. P. 23(a)(1). The potential members of the Class as defined

10    are so numerous that joinder of all members is unfeasible and not practicable. While the precise

11    number of Class members has not been determined at this time, Plaintiff is informed and believes that

12    many thousands or millions of consumers have purchased the Products.

13    40.    Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact

14    common to the Class, which predominate over any questions affecting only individual Class members.

15    These common questions of law and fact include, without limitation:

16        a.    Whether Defendant falsely and/or misleadingly misrepresented the Products as

17            being "All Natural";

18        b.    Whether Defendant's misrepresentations are likely to deceive reasonable

19            consumers;

20        c.    Whether Defendant violated California Business and Professions Code § 17500,

21            *et seq.*;

22        d.    Whether Defendant violated California Business and Professions Code § 17200,

23            *et seq.*;

24        e.    Whether Defendant breached an express warranty;

25        f.    Whether Defendant violated California Civil Code § 1750, *et seq.*; and

26        g.    The nature of the relief, including equitable relief, to which Plaintiff and the

27            Class members are entitled.

28

CLASS ACTION COMPLAINT

41.     <u>Typicality</u>. Fed. R. Civ. P. 23(a)(3).  Plaintiff's claims are typical of the claims of the Class.  Plaintiff and all Class members were exposed to uniform practices and sustained injury arising out of and caused by Defendant's unlawful conduct.

42.     <u>Adequacy of Representation</u>. Fed. R. Civ. P. 23(a)(4).  Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiff's Counsel are competent and experienced in litigating class actions.

43.     <u>Superiority of Class Action</u>. Fed. R. Civ. P. 23(b)(3).  A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable.  Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims.  There will be no difficulty in the management of this action as a class action.

44.     <u>Injunctive and Declaratory Relief</u>. Fed. R. Civ. P. 23(b)(2).  Defendant's misrepresentations are uniform as to all members of the Class.  Defendant has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or declaratory relief is appropriate with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

**(Violation of California False Advertising Law – Cal. Bus. & Prof. Code § 17500, *et seq*.)**

45.     Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

46.     Defendant publicly disseminated untrue or misleading advertising or intended not to sell the Products as advertised in violation of California Business & Professional Code § 17500, *et seq*., by representing that the Products are "All Natural," when they are not.

47.     Defendant committed such violations of the False Advertising Law with actual knowledge or in the exercise of reasonable care should have known was untrue or misleading.

48.     Plaintiff reasonably relied on Defendant's representations and/or omissions made in violation of California Business & Professional Code § 17500, *et seq*.

49.     As a direct and proximate result of Defendant's violations, Plaintiff suffered injury in fact and lost money.

CLASS ACTION COMPLAINT

50.     Plaintiff, on behalf of himself and Class members, seeks equitable relief in the form of an order requiring Defendant to refund Plaintiff and all Class members all monies they paid for the Products, and injunctive relief in the form of an order prohibiting Defendant from engaging in the alleged misconduct and performing a corrective advertising campaign.

## SECOND CAUSE OF ACTION

**(Violations of California Unfair Competition Law – Cal. Bus. & Prof. Code § 17200, *et seq.*)**

51.     Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

52.     Defendant engaged in unlawful, unfair, and/or fraudulent conduct under California Business & Professional Code § 17200, *et seq.*, by representing that the Products are "All Natural," when they are not.

53.     Defendant's conduct is unlawful in that it violates the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.*, the False Advertising Law, California Business & Professions Code § 17500.

54.     Defendant's conduct is unfair in that it offends established public policy and/or is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to Plaintiff and Class members.  The harm to Plaintiff and Class members arising from Defendant's conduct outweighs any legitimate benefit Defendant derived from the conduct.  Defendant's conduct undermines and violates the stated spirit and policies underlying the Consumers Legal Remedies Act and the False Advertising Law as alleged herein.

55.     Defendant's actions and practices constitute "fraudulent" business practices in violation of the UCL because, among other things, they are likely to deceive reasonable consumers.  Plaintiff relied on Defendant's representations and omissions.

56.     As a direct and proximate result of Defendant's violations, Plaintiff suffered injury in fact and lost money.  Plaintiff, on behalf of himself and Class members, seeks equitable relief in the form of an order requiring Defendant to refund Plaintiff and all Class members all monies they paid for the Products, and injunctive relief in the form of an order prohibiting Defendant from engaging in the alleged misconduct and performing a corrective advertising campaign.

### THIRD CAUSE OF ACTION

**(Breach of Express Warranty)**

57.     Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

58.     Plaintiff brings this claim individually and on behalf of the Class.

59.     Plaintiff and each member of the Class formed a contract with Defendant at the time Plaintiff and the other members of the Class purchased one or more of the Products.  The terms of that contract include the promises and affirmations of fact made by Defendant on the packaging of the Products, as described above.  The Products' packaging constitutes express warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Defendant on the other.

60.     All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Class.

61.     Defendant breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing the products that could provide the benefits promised, i.e. that the Products were "all natural."

62.     As a result of Defendant's breach of its contract, Plaintiff and the Class have been damaged in the amount of the purchase price of any and all of the Products they purchased.

### FOURTH CAUSE OF ACTION

**(Violation of Consumer Legal Remedies Act – Civil Code § 1750, *et seq.*)**

63.     Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

64.     Plaintiff brings this claim individually and on behalf of the Class.

65.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* (the "CLRA") because Defendant's actions and conduct described herein constitute transactions that have resulted in the sale or lease of goods or services to consumers.

66.     Plaintiff and each member of the Class are consumers as defined by California Civil Code §1761(d).

67.     The Products are goods within the meaning of Civil Code §1761(a).

13

68.     Defendant violated the CLRA in at least the following respects:

    a.    in violation of §1770(a)(5), Defendant represented that the Products have approval, characteristics, and uses or benefits which they do not have;

    b.    in violation of §1770(a)(7), Defendant represented that the Products are of a particular standard, quality or grade, or that the Products are of a particular style, or model, when they are of another;

    c.    in violation of §1770(a)(9), Defendant has advertised the Products with intent not to sell them as advertised; and

    d.    in violation of §1770(a)(16), Defendant represented that the Products have been supplied in accordance with previous representations, when they were not.

69.     Defendant affirmatively represented to consumers that the Products are "all natural."

70.     Defendant omitted to state that the Products contain GMOs and other ingredients that are not natural.

71.     This sort of information is relied upon by consumers in making purchasing decisions, and is fundamental to the decision to purchase food products.

72.     Plaintiff relied upon Defendant's misrepresentations to her detriment.

73.     Defendant's misrepresentations constitute unfair, deceptive, and misleading business practices in violation of Civil Code §1770(a).

74.     Defendant's deceptive acts and omissions occurred in the course of selling a consumer product and have occurred continuously through the filing of this Complaint.

75.     On February 13, 2013, Plaintiff notified Defendant in writing by certified mail of the violations alleged herein and demanded that Defendant remedy those violations.

76.     If Defendant fails to remedy the violations alleged herein within 30 days of receipt of Plaintiff's notice, Plaintiff will amend this Complaint to add claims for actual, punitive, and statutory damages pursuant to the CLRA.

CLASS ACTION COMPLAINT

1      **WHEREFORE**, Plaintiff, on behalf of himself and Class members, prays for relief as follows:

2      A.      For an order that this action may be maintained as a class action under Rule 23 of

3   the Federal Rules of Civil Procedure, that Plaintiff be appointed Class representative, and that

4   Plaintiff's counsel be appointed as counsel for the Class;

5      B.      For an order requiring Defendant to refund Plaintiff and all Class members for the

6   Products;

7      C.      For an order prohibiting Defendant from engaging in the misconduct described

8   herein;

9      D.      For an award of attorneys' fees;

10     E.      For an award of the costs of suit incurred herein, including expert witness fees;

11     F.      For an award of interest, including prejudgment interest, at the legal rate; and

12     G.      For such other and further relief as this Court deems just and proper.

13                              **DEMAND FOR JURY TRIAL**

14     Plaintiff demands trial by jury of all claims so triable.

15

16  Dated: February 15, 2013                 Respectfully submitted,
                                             **AHDOOT & WOLFSON, PC**
17

18

19                                           Tina Wolfson
20                                           Robert Ahdoot
                                             Theodore W. Maya
21                                           10850 Wilshire Blvd., Suite 370
                                             Los Angeles, California 90024
22                                           Tel: 310-474-9111
                                             Facsimile: 310-474-8585
23

24                                           Counsel for Plaintiffs,
                                             Michael Hill
25

26

27

28

                                      15
                          CLASS ACTION COMPLAINT

1

### AFFIDAVIT OF TINA WOLFSON

2    I, Tina Wolfson, declare as follows:

3    1.    I am an attorney with the law firm of Ahdoot & Wolfson, P.C., counsel for Plaintiff

4  Michael Hill ("Plaintiff") in this action.  I am admitted to practice law in California and before this

5  Court, and am a member in good standing of the State Bar of California.  This declaration is made

6  pursuant to California Civil Code section 1780(d).  I make this declaration based on my research of

7  public records and upon personal knowledge and, if called upon to do so, could and would testify

8  competently thereto.

9    2.    Based on my research and personal knowledge, Defendant Robert's American Gourmet

10  Food, LLC ("Defendant") does business within the County of San Francisco and Plaintiff purchased

11  Defendant's products within the County of San Francisco, as alleged in the Class Action Complaint.

12    I declare under penalty of perjury under the laws of the United States and the State of

13  California this 15th day of February 2013 in Los Angeles, California that the foregoing is true and

14  correct.

15

16

17                                                          Tina Wolfson

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT